# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| —————————————————— ) | |
| HARVEY BERAM, as Administrator of ) | |
| the Estate of Sandy Beram, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| v. ) | No. 16-10569-PBS |
| ) | |
| CEACO, INC.; CAROL J. GLAZER; and ) | |
| CYNTHIA A. BASQUE, ) | |
| ) | |
| Defendants. ) | |
| —————————————————— ) | |

### MEMORANDUM AND ORDER

December 1, 2016

Saris, C.J.

### INTRODUCTION

Sandy Beram,[1] a puzzle inventor, brought this suit against Ceaco, Inc. ("Ceaco"), its President, Carol Glazer, and its CFO, Cynthia Basque, alleging that they failed to make contractually required royalty payments on puzzle product designs.

Much of the complaint is time-barred, and other claims are without merit. Further, Glazer and Basque are not personally liable for the contract claims. Ceaco's motion to dismiss (Docket No. 11) is **ALLOWED** in part and **DENIED** in part. Glazer

---

[1]   Sandy Beram passed away during the course of litigation. Harvey Beram, the administrator of Sandy Beram's estate, has been substituted as the plaintiff. See Fed. R. Civ. P. 25(a).

and Basque's motion to dismiss (Docket No. 13) is **ALLOWED** in part and **DENIED** in part.

## BACKGROUND

### I.   Factual Allegations

For purposes of the motion to dismiss, the facts are taken as alleged in the complaint. In re Loestrin 24 Fe Antitrust Litig., 814 F.3d 538, 545 (1st Cir. 2016). The contract between Beram and Ceaco, which is attached to the complaint, is also considered because it is incorporated by reference in the complaint and central to Beram's claim. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

Sandy Beram was a puzzle inventor. On November 2, 1993, she and Ceaco entered into a contract by which Ceaco licensed several of Beram's puzzles for manufacture and sale. The covered products were listed in Schedule 1 of the contract, which initially referenced two puzzle designs: "Fuzzy Grip" and "Search for Small Stuff." Additional puzzle designs were added to Schedule 1 in subsequent amendments, for a total of fourteen licensed puzzle designs. One of those additional puzzle designs was "Puzzle Stix," which was added to Schedule 1 on September 3, 1999.

The contract contained the following provision regarding royalty payments:

      3. **Royalties and Other Payments.** Subject to the terms and conditions of this Agreement, CEACO, Inc. agrees to pay to Sandy Beram, for each type of Merchandise, the Merchandise Royalty Rate applicable to such Merchandise multiplied by the Selling Price (as defined below) for each item of such Merchandise sold in the Territory by CEACO Inc. and all sublicensees (**"Royalty Payments"**). As used in this Agreement, (i) the **"Selling Price"** shall mean the greater of (1) the actual sales price for such item if sold on a wholesale basis, and (2) if the item is sold other than on a wholesale basis, (x) the actual sales price less (y) returns, reasonable and customary discounts, sales tax, freight and insurance; and (ii) any product incorporating an Item will be considered Merchandise for purposes of this Agreement, and any product will be deemed to incorporate an Item when it is based in whole or in part on the Item or any part thereof. Sales shall be deemed to have been made when invoiced or shipped, whichever occurs first.

Schedule 1 provided the royalty rates for each of the puzzle designs.

    In section 5 of the contract, Ceaco agreed to provide Beram with quarterly reports listing selling prices, gross sales, merchandise royalty rates, and royalty payments for her puzzle designs.

    Under section 16 of the contract, the effective term of the contract is one hundred years following the death of Sandy Beram, unless the contract is terminated earlier. The contract provided for three early termination scenarios. First, if a party breaches the agreement, the nonbreaching party may

terminate the agreement if the breaching party does not cure the breach upon notice. Second, Beram may terminate the contract if aggregate royalty payments for four consecutive quarters are less than the "minimum annual royalty payment" amounts set forth for each product in Schedule 1. Third, the contract may automatically terminate upon certain conditions not present here.

Beram alleges that the defendants have long failed to submit payment reports or to pay total royalties, including purportedly required minimum royalty payments. Beram also alleges that Ceaco "fraudulently concealed" its books and records relating to sales and royalties. Beram further alleges that "[i]n or about the 2000's," Ceaco began to reduce and ultimately eliminate the royalty payments. Upon inquiry, Glazer told Beram that sales of her puzzles were being ended.

Beram also alleges that between 2011 and 2015, Ceaco sold a product named "Puzzlestix" that Ceaco attributed to a different inventor. Beram did not receive royalty payments for sales of this product.

## II.  Procedural History

Beram filed the complaint on March 23, 2016, listing fourteen causes of action:

(1) Copyright infringement by Ceaco and Glazer,

(2) Trademark infringement by Ceaco and Glazer,

(3) Breach of contract by all defendants,

(4) Breach of implied covenant of good faith and fair dealing by all defendants,

(5) Promissory estoppel/detrimental reliance by all defendants,

(6) Unjust enrichment by Ceaco and Glazer,

(7) Conversion by Ceaco and Glazer,

(8) Misappropriation by Ceaco and Glazer,

(9) Fraud and deceit by all defendants,

(10) Negligent misrepresentation by all defendants,

(11) Fraudulent transfer/fraudulent conveyance by all defendants,

(12) Violation of Mass. Gen. Laws ch. 93A by all defendants,

(13) Civil conspiracy by all defendants, and

(14) Accounting as to all defendants.

As relief, Beram sought $4 million in compensatory and punitive damages, in addition to equitable and declaratory relief.

On June 3, 2016, Ceaco moved to dismiss. On the same day, Basque and Glazer moved to dismiss.

## DISCUSSION

### I.   Standard of Review

A Rule 12(b)(6) motion is used to dismiss complaints that "fail[] to state a claim upon which relief can be granted." See

Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, this Court must accept the factual allegations in Beram's amended complaint as true, construe reasonable inferences in her favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014).

## II. Choice of Law

The contract claims are governed by New York law because of the choice-of-law provision in the contract.[2]

The parties agreed at the motion hearing that Massachusetts law would apply to the tort claims. See James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co., 112 F.3d 1240, 1245 (1st Cir. 1997) (federal court sitting in diversity is free to forego an independent choice-of-law analysis and accept the parties' agreement).

## III. Time Bar

Beram alleges that Ceaco has not paid a full royalty amount or submitted royalty reports since 1994. Beram's claims are time-barred to the extent that they fall outside the following limitations periods:

---

[2]      Section 17(b) states: "Governing Law. The validity, construction and enforcement of this Agreement shall be governed by the laws of the State of New York, without regard to the principles thereof regarding conflicts of law."

- <u>Count III</u>, Breach of Contract. N.Y. C.P.L.R. 213(2) (six-year statute of limitations for New York contract actions).

- <u>Count IV</u>, Breach of Implied Covenant of Good Faith and Fair Dealing. N.Y. C.P.L.R. 213(2) (six-year statute of limitations for New York contract actions); <u>McCormick v. Favreau</u>, 82 A.D.3d 1537, 1540 (N.Y. App. Div. 2011).

- <u>Count V</u>, Promissory Estoppel/Detrimental Reliance. N.Y. C.P.L.R. 213(2) (six-year statute of limitations for New York contract actions).

- <u>Count VI</u>, Unjust Enrichment. <u>Sentinel Prod. Corp. v. Mobile Chem. Co.</u>, No. CIV. A. 98-11782-PBS, 2001 WL 92272, at *23 (D. Mass. Jan. 17, 2001) (three- or six-year statute of limitations on Massachusetts unjust enrichment depending on whether the essential nature of the claim is tort or quasi-contract).

- <u>Count VII</u>, Conversion. Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for Massachusetts tort actions).

- <u>Count VIII</u>, Misappropriation. Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for Massachusetts tort actions).

- <u>Count IX</u>, Fraud. Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for Massachusetts tort actions).

- <u>Count X</u>, Negligent Misrepresentation. Mass. Gen. Laws ch. 260, § 2A (three-year statute of limitations for Massachusetts tort actions).

- <u>Count XI</u>, Fraudulent Conveyance/Fraudulent Transfer. Mass. Gen. Laws, ch. 109A, § 10 (four-year statute of limitations for Massachusetts fraudulent transfer).

- <u>Count XII</u>, Violation of Mass. Gen. Laws ch. 93A. <u>See</u> Mass. Gen. Laws ch. 260, § 5A (four-year statute of limitations for Chapter 93A claims).

- <u>Count XIII</u>, Civil Conspiracy. <u>See</u> <u>Pagliuca v. City of Boston</u>, 626 N.E.2d 625, 628 (Mass. App. Ct. 1994) (three-year statute of limitations for Massachusetts civil conspiracy).

Beram makes two arguments with regard to the time-bar issue. First, Beram argues that the Massachusetts fraudulent concealment statute tolls the statute of limitations. <u>See</u> Mass. Gen. Laws ch. 260, § 12. Beram argues that Ceaco fraudulently concealed its misconduct by failing to provide Beram with quarterly sale reports, as required by section 5 of the contract.

Beram is correct that Ceaco has had a continuing contractual obligation to provide quarterly sale reports. While Ceaco suggests that it stopped selling Beram puzzle products years ago, none of the termination conditions in the contract

have been met. Ceaco still has the obligation to keep providing quarterly sale reports -- even if those reports reflect zero sales. But while Ceaco's failure to provide quarterly reports is a potential contract violation, it does not rise to the level of fraudulent concealment. Beram cites a number of cases for the proposition that fraudulent concealment does not require an affirmative act of concealment and that a mere failure to disclose may count. But every one of those cases concerned a failure to disclose within a fiduciary relationship. See, e.g., Demoulas v. Demoulas Super Markets, Inc., 677 N.E.2d 159, 174 (Mass. 1997) ("Where a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying § 12."); Shane v. Shane, 891 F.2d 976, 985 (1st Cir. 1989) ("[W]here the plaintiff owes the defendant a fiduciary duty, the failure to disclose facts tolls the statute of limitations."); Puritan Med. Ctr., Inc. v. Cashman, 596 N.E.2d 1004, 1010 (Mass. 1992) ("Where, as in this case, a fiduciary relationship exists between plaintiff and defendant . . . mere failure to reveal information may be sufficient to constitute fraudulent conduct for the purposes of G.L. c. 260, § 12."). Here, there was a contractual disclosure requirement but no fiduciary relationship between the parties. Fraudulent

9

concealment does not toll the statute of limitations on Beram's royalty claims dating back to 1994.

Second, Beram argues that even if fraudulent concealment does not toll her claims, her suit should be allowed to move forward to the extent that her complaint relates to time periods that are within the statute of limitations. Under New York law, the statute of limitations for installment contracts begins to run when each installment becomes due. Cadlerock, L.L.C. v. Renner, 898 N.Y.S.2d 127, 128 (N.Y. App. Div. 2010). A contract that provides a continuing obligation to pay royalties can be considered an installment contract. See Peterson v. Highland Music, Inc., 140 F.3d 1313, 1321 (9th Cir. 1998); Gilkyson v. Disney Enterprises, Inc., 244 Cal. App. 4th 1336, 1343 (Cal. Ct. App. 2016) ("The continuing nature of the obligation to pay periodic royalties renders each breach of that obligation separately actionable."). To the extent that Ceaco failed to make required royalty payments for any quarterly periods within the applicable statute of limitations, Beram's claims are not time-barred. The same is true to the extent that Beram complains of Ceaco's failure to provide required sale reports for any period within the applicable statute of limitations.

IV.  **Ceaco's Other Arguments for Dismissal**

A.  **Copyright Infringement Claim**

Registration of the copyright is a nonjurisdictional precondition to filing a valid federal copyright infringement claim. 17 U.S.C. § 411(a); see also Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 166–69 (2010); Airframe Sys., Inc. v. L-3 Commc'ns Corp., 658 F.3d 100, 105 (1st Cir. 2011). Beram does not allege that there was ever a registered trademark.

Beram responds that under section 1(b) of the contract, it was the obligation of Ceaco to secure the copyright for her. But while Ceaco's failure to secure a copyright might be a breach of contract, Beram points to no authority that would allow a copyright claim to survive a failure of registration on the basis of such a contractual breach. Count I is **DISMISSED**.

B.  **Trademark Infringement Claim**

Ceaco argues that, whatever trademark rights Beram may have had to her puzzles, she has abandoned those rights through cessation of use. See Gen. Healthcare Ltd. v. Qashat, 364 F.3d 332, 334–36 (1st Cir. 2004). Under the Lanham Act, "[a] mark shall be deemed to be 'abandoned' . . . [w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment." 15 U.S.C. § 1127. "To rebut a prima facie showing of

abandonment, a purported trademark owner must demonstrate that it intends to resume use 'in the reasonably foreseeable future.'" <u>Gen. Healthcare Ltd.</u>, 364 F.3d at 337 (quoting <u>Silverman v. CBS Inc.</u>, 870 F.2d 40, 46 (2d Cir. 1989)).

The complaint does not allege any recent use of the "Puzzle Stix" name by Beram or by Ceaco, as her licensee, for her puzzles. The complaint alleges that between 2011 and 2015, Ceaco used that name to sell puzzles -- but those puzzles were attributed to other people, not to Beram. She was also told by Ceaco that sales of her puzzles had ended. Moreover, the complaint fails to allege any intention by Beram's estate to use the name in the reasonably foreseeable future. Count II is **DISMISSED** without prejudice.

### C.   Breach of Contract for Failure to Make Required Royalty Payments

Beram claims that Ceaco breached its contract by, among other things, failing to make required royalty payments. This claim can be divided into two sub-issues: whether Ceaco actually sold any units of Beram's puzzle products without paying royalties, and whether Ceaco was required to make minimum annual royalty payments even in the absence of any actual sales.

As to the first issue, Beram has adequately pleaded that Ceaco made actual sales of Beram's puzzle products within the applicable statute of limitations period without paying required

royalties. Beram alleges that from 2011 to 2015, Ceaco sold a
product called "PuzzleStix," attributed to another puzzle
creator, without paying required royalties to Beram. A product
named "Puzzle Stix" has been part of Beram's agreement with
Ceaco since 1999. In the contract, "Puzzle Stix" is described as
"[a] boxed jigsaw puzzle with pieces resembling thin egg noodle
strips of various lengths with small connectors." While the
complaint provides no description of the product that Ceaco was
selling as "PuzzleStix," the complaint sufficiently alleges
actual sales of her product without payment of required
royalties.

As to the second, Beram's breach of contract claim has no
merit inasmuch as she seeks minimum annual royalty payments even
in the absence of actual sales. The term "minimum annual royalty
payments" appears in only two places in the contract. First,
Section 16(b) of the contract provides that Beram may terminate
the contract if royalty payments fall below the "minimum annual
royalty payment" for four consecutive quarters. Second, Schedule
1 provides a dollar figure for "minimum annual royalty payments"
for each puzzle product.

Ceaco persuasively argues that the contract does not
establish an obligation for Ceaco to pay a "minimum annual
royalty payment" to Beram. When Schedule 1 is read in isolation,
it may appear that minimum annual royalty payments are due even

13

in the absence of actual sales. Each page of Schedule 1 lists a product name, a royalty rate, and then a "minimum annual royalty payment." But a contract must be "read as a whole, with every part interpreted with reference to the whole." CNR Healthcare Network, Inc. v. 86 Lefferts Corp., 59 A.D.3d 486, 489 (N.Y. App. Div. 2009). Reading the contract as a whole makes it clear that there is no minimum payment obligation.

Section 3 of the contract establishes Ceaco's payment obligation. It provides that Ceaco "agrees to pay" to Beram the product of the merchandise royalty rate and the selling price of each item sold. In other words, Ceaco's obligation to pay is based on the number of actual items sold. Section 3 never requires Ceaco to pay a "minimal annual royalty payment."

The minimum annual royalty payment is merely a number that triggers Beram's termination rights under Section 16(b). Reading the termination provisions as a whole reinforces that conclusion. If Ceaco were required to make minimum annual royalty payments even in the absence of actual sales, then failure to make such payments would be a contractual breach that would allow Beram to terminate the contract under section 16(a). But that would render meaningless the separate provision in section 16(b) that allows Beram to terminate if the aggregate royalty payments are less than the minimum annual royalty payment for four quarters.

14

Beram's breach of contract claim survives Ceaco's motion to dismiss only to the extent that the claim is premised on Ceaco's failure to pay required royalties for <u>actual</u> sales of Beram's puzzle products within the applicable statute of limitations period.

### D.   Fraud Claims

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud that requires "specification of the time, place and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996). Beram's complaint does not meet that pleading requirement. The complaint does not state what fraudulent misrepresentations were made, when, where, or by whom. Fraud is only pleaded in a conclusory way.

Beram argues that Ceaco engaged in fraud by selling PuzzleStix under a different puzzle creator's name and without notifying Beram. But PuzzleStix was sold openly -- the complaint alleges that they were sold in Barnes & Noble, among other retail chains. Counts IX and XI are **<u>DISMISSED</u>**.

### E.   Accounting

The existence of a fiduciary relationship is a prerequisite for an equitable accounting claim under Massachusetts law. <u>In re McCabe</u>, 345 B.R. 1, 10 (D. Mass. 2006) (citing <u>Chedd-Angier</u>

<u>Prod. Co. v. Omni Publ'ns Int'l, Ltd.</u>, 756 F.2d 930, 937 (1st Cir. 1985)). No fiduciary relationship existed. Count XIV is **DISMISSED**.

### F.   Other Claims

Ceaco lumps together a number of the other counts in the complaint and argues, in a conclusory manner, that those claims are insufficiently pleaded or time-barred. Due to a paucity of briefing, this Court denies dismissal of other claims beyond those addressed above.

## V.   **Individual Liability for Glazer and Basque**

Glazer and Basque move to dismiss on the ground that Beram has failed to assert a basis for individual liability. Glazer signed the contract in her capacity as President of Ceaco, but she is not an individual party to the agreement. "[I]t is settled beyond peradventure that a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement." <u>McCarthy v. Azure</u>, 22 F.3d 351, 356 (1st Cir. 1994). Basque did not sign the contract at all, nor was she even an employee of Ceaco at the time the contract was signed. She cannot be party to the contract either.

Beram argues for piercing the corporate veil to hold Glazer and Basque personally liable on the contract. But the complaint lacks any factual allegations that would support piercing the

16

corporate veil. See <u>Morris v. N.Y. State Dep't of Taxation &</u> <u>Fin.</u>, 623 N.E.2d 1157, 1160–61 (N.Y. 1993). Beram claims that the defendant's use of multiple entities named "Ceaco" was improper. But Beram seems to be pointing at a mere evolution of corporate forms for Ceaco, which does not necessarily suggest any impropriety. Beram also makes a conclusory accusation that the "unity of control" of Glazer as Chairman, President, and sole shareholder of Ceaco justifies piercing the veil. But Glazer's multiple roles does not by itself plausibly support any finding of impropriety either. Beram cannot sustain a claim in contract against either of the individual defendants. Counts III and IV, as alleged against Glazer and Basque, are **DISMISSED**.

However, Glazer and Basque do not argue that there can be no individual liability on any of the other claims. This Court denies dismissal of the other claims against Glazer and Basque beyond those addressed above with regard to Ceaco.

## ORDER

Ceaco's motion to dismiss (Docket No. 11) is **ALLOWED** as to Counts I, II, IX, XI, and XIV and otherwise **DENIED**. Glazer and Basque's motion to dismiss (Docket No. 13) is **ALLOWED** as to Counts I, II, III, IV, IX, XI, and XIV and otherwise **DENIED**. The counts are dismissed with prejudice except for Count II.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge